CUAUHTEMOC ORTEGA (Bar No. 257443)
Federal Public Defender
MICHAEL BO GRIFFITH (Bar No. 31535)
(E-Mail: bo_griffith@fd.org)
Deputy Federal Public Defender
321 East 2nd Street
Los Angeles, California 90012-4202
Telephone: (213) 894-2854
Facsimile: (213) 894-0081

Attorneys for Defendant
Brayan Ramos-Brito

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

## SOUTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>Brayan Ramos-Brito<br>　　　　　Defendant. | Case No. 8:25-mj-003506-1<br><br>**MEMORANDUM IN SUPPORT OF PRETRIAL RELEASE** |

Brayan Ramos-Brito, by and through his counsel of record, Deputy Federal Public Defender Bo Griffith, request review of Magistrate Judge Autumn D. Spaeth's June 9, 2025 detention order and request an order granting Mr. Ramos-Brito pre-trial release under subsection (c), Title 18 U.S.C § 3142, with conditions the Court deems appropriate to ensure appearance.

　　　　　　　　　　　　　　　　Respectfully submitted,

　　　　　　　　　　　　　　　　CUAUHTEMOC ORTEGA
　　　　　　　　　　　　　　　　Federal Public Defender

DATED: June 13, 2025　　　　　By　*/s/ m. Bo Griffith*
　　　　　　　　　　　　　　　　MICHAEL BO GRIFFITH
　　　　　　　　　　　　　　　　Deputy Federal Public Defender
　　　　　　　　　　　　　　　　Attorney for Bryan Ramos-Brito

# I. INTRODUCTION

On June 9, 2025 Mr. Ramos-Brito made his initial appearance in front of Magistrate Judge Autumn D. Spaeth on a complaint alleging a violation of 18 U.S.C. § 111, assault on a federal officer. The government did not request detention. The Court held a detention hearing on its own motion pursuant to 18 U.S.C. 3142(f)(2) because the case purportedly involved a "serious risk that the defendant will flee if released." Dkt. 9. The court then found "by clear and convincing evidence that no condition or combination of conditions of release will reasonably assure the safety of any other person and the community" and "by a preponderance of the evidence that no condition or combination of conditions of release will reasonably assure the defendant's appearance as required." *Id.* The court based its ruling on the complaint and the pretrial service report. *See* Ex. 1.

However, the relevant sections of the complaint relied upon by the court is directly contradicted by video evidence offered to the court by defense counsel at the hearing. Ex. 2. The court refused to consider, or even watch, the video evidence. *See* Ex. 1. Since the hearing, the government has acknowledged the portions of the PSR relied on by the court are inaccurate. Ex. 5.

In its order of detention, the court lists the following reasons for detention:

1. "The offense charged is a crime of violence"
2. "Subject to a lengthy period of incarceration if convicted"
3. "Lack of stable employment"
4. "Prior criminal history"
5. "The defendants release poses serious danger to any person or the community"
6. "Lack of candor with pretrial services resulted in unverified background"
7. "Criminal history, financial information and DMV history in pretrial service report reflect knowing repeated violations of the law."
8. "Allegations of threats to injure or kill federal law enforcement reflects Defendant is a serious danger to law enforcement." Dkt. 9.

1  Besides a lack of stable employment, each one of these reasons for detention is
2  unsupported by reliable evidence or is flat out wrong. Mr. Ramos-Brito should be
3  released on pre-trial bond.

## II. <u>LEGAL STANDARD</u>

Our Constitution mandates that "liberty is the norm, and detention prior to trial or without trial is the carefully limited exception." *United States v. Salerno*, 481 U.S. 739, 755 (1987). The Bail Reform Act (BRA) must be read to "fall within that carefully limited exception." *Id*. Under the BRA, release should be denied only "in rare circumstances" and "[d]oubts regarding the propriety of release should be resolved in the defendant's favor." *United States v. Motamedi,* 767 F.2d 1403, 1405 (9th Cir. 1985).

The Bail Reform Act splits the determination of detention versus release into two parts. The Court must first determine whether it may conduct a detention hearing at all. 18 U.S.C. § 3142(f). If it cannot, then the Court must order the person released on appropriate conditions. 18 U.S.C. § 3142(a), (b), (c). If the Court finds that the government is entitled to a detention hearing, then the Court holds such a hearing to determine whether there are conditions that can be imposed that would reasonably assure the person's appearance and the safety of the community. 18 U.S.C. § 3142(f).

The statute provides that the judicial officer shall hold a detention hearing "*upon motion of the attorney for the Government*" in cases involving certain serious charges, such as a "crime of violence." § 3142(f)(1)(A)(emphasis added). Alternatively, the judicial officer shall hold a detention hearing "upon motion of the attorney for the Government or *upon the judicial officer's own motion* in a case, that involves— (A) a *serious* risk that such person will flee; or (B) a *serious* risk that such person will obstruct or attempt to obstruct justice, or threaten, injure, or intimidate, or attempt to threaten, injure, or intimidate, a prospective witness or juror." § 3142(f)(2)(A)-(B) (emphasis added). Either showing must be supported by evidence in the record. *See, e.g., United States v. Himler*, 797 F.2d 156, 160 (3d Cir. 1986) (explaining that when

2

only basis for detention is § 3142(f)(2)(A), defendant "may be detained only if the record supports a finding that he presents a serious risk of flight").

Requiring proof that a person actually poses a serious risk of flight comports with BRA's purpose—in accordance with the Due Process clause—of allowing release for most federal defendants. *See United States v. Townsend*, 897 F.2d 989, 993-94 (9th Cir. 1990) (noting the following three principles of the BRA: "1. Federal law has traditionally provided that a person arrested for a non-capital offense shall be admitted to bail. . . . 2. Only in rare cases should release be denied. . . . 3. Doubts regarding the propriety of release are to be resolved in favor of defendants."). Further, § 3142(f)(2)(A) is the only time the BRA uses the phrase "serious risk" of flight. That distinction suggests that "serious risk of flight" denotes a special danger—*i.e.*, that the defendant will flee the jurisdiction—beyond simple nonappearance. *United States v. White*, 2021 WL 2155441, at *10 (M.D. Tenn. May 27, 2021) (recognizing that "serious flight risk" is "narrower" than "flight risk" and is "distinct from 'risk of non-appearance'"). Legislative history confirms this reading. *See* S. REP. NO. 225, 1983 WL 25404, at *12 ("Under subsection f(2), a pretrial detention hearing may be held" in a case that involve "a serious risk that the defendant will flee" (citing *United States v. Abrahams*, 575 F.2d 3, 8 (1st Cir. 1978) (holding that only a "rare case of extreme and unusual circumstances . . . justifies pretrial detention"))).

## III. ARGUMENT

**A. The Record Does Not Support a Finding that Mr. Ramos-Brito is a "serious risk" of flight.**

The record does not, and did not, contain any evidence that Mr. Ramos-Brito is a "serious risk" of fleeing the jurisdiction. Under the BRA, release should be denied only "in rare circumstances" and "[d]oubts regarding the propriety of release should be resolved in the defendant's favor." *United States v. Motamedi,* 767 F.2d 1403, 1405 (9th Cir. 1985). The magistrate court flipped this standard, resolving all doubts in favor

3

of detention, even though the party prosecuting his case did not believe Mr. Ramos-Brito constituted a serious enough risk of flight to request detention.

Indeed, Mr. Ramos is not a "serious risk" of flight for a variety of reason. He is a lifelong resident of the Central District. Ex. 4. He has bail resources. *Id*. He has no history of substance abuse, mental health disorder, or any history of non-appearance. *Id*. He has no prior criminal history. His only prior interaction with law enforcement was for driving without a license. *Id*. Contrary to the magistrate court's finding he is not subject to a lengthy period of incarceration if convicted. 18 U.S.C § 111 has a maximum penalty of three years in prison. The magistrate court's assertion that he lacked candor with pretrial services is false and is contained nowhere in the PSA. *See* Ex. 4. His financial information does not reflect "knowing repeated violations of state law" as the magistrate judge found, it shows he does not have the resources to be a serious risk to flee the jurisdiction. Nor does his "DMV history." Dkt. 9 at 3, Ex. 5.

Finally the government has confirmed that the threats to "kill federal law enforcement" which were not contained in the complaint, but nonetheless accepted by the magistrate court, were not made by Mr. Ramos-Brito. Ex. 5. A lack of staple employment is not enough to establish a "serious risk of flight." A detention hearing never should have been held, and should not be held now. Instead, Mr. Ramos-Brito should be released pre-trial.

**B. Purported Risk Of Danger Is Not A Valid Basis For A Detention Hearing.**

The magistrate court's decision to hold a detention hearing for Mr. Ramos-Brito seems to some extent to have been based on a purported risk of danger to the community. Ex. 1. This misreads the BRA and is unsupported by evidence. The Ninth Circuit has squarely held that, in cases involving offenses that are not named in 18 U.S.C. § 3142(f)(1), "danger to the community" may not form the basis of a detention order; rather, it should be considered only in crafting appropriate conditions of release:

> "We are not persuaded that the Bail Reform Act authorizes pretrial detention without bail solely on a finding of dangerousness. This interpretation of the Act

would render meaningless 18 U.S.C. § 3142(f)(1) and (2). Our interpretation is in accord with our sister circuits who have ruled on this issue. See *United States v. Byrd*, 969 F.2d 106 (5th Cir. 1992); *United States v. Ploof*, 851 F.2d 7 (1st Cir. 1988); *United States v. Himler*, 797 F.2d 156 (3d Cir. 1986)."

*United States v. Twine*, 344 F.3d 987, 987 (9th Cir. 2003). *See also, e.g.*, *Himler*, 797 F.2d at 160-162 (3d Cir. 1986) ("We find that the district court improperly considered danger to the community in detaining the defendant pending trial rather than in setting conditions of release."); *United States v. Friedman*, 837 F.2d 48, 49 (2d Cir. 1988) ("The Bail Reform Act does not permit detention on the basis of dangerousness in the absence of risk of flight, obstruction of justice, or an indictment for the offenses enumerated [in § 3142(f)(1)].").

Although it is easy misread *Twine* as limited to the threshold question of whether a *detention hearing* can be based on dangerousness--as opposed to a detention order itself--that reading has been squarely rejected. *United States v. Nwabueze*, CR 10-411-MMM, Dkt. 36, at 9-10 (C.D. Cal. June 28, 2010) (explaining that *Twine* specifically held that danger along could not justify "pretrial *detention* without bail") (emphasis in *Nwabueze*); *United States v. Schoeplin*, CR 22-121-FMOMAR, Dkt. 51, at 4 (C.D. Cal. May 19, 2022) (finding *Nwabueze* "particularly persuasive" and concluding "the government's interpretation does not hold water"). Accordingly, this Court should not and need not consider danger in evaluating whether to order detention. Rather, danger to the community is relevant only in considering appropriate conditions of release. *See* § 3142(g)(4).

**C. There is Insufficient Evidence to Support the Conclusion That No Combinations or Conditions of Release Will Reasonably Assure the Safety of the Community or Mr. Ramos-Brito's Appearance at Trial.**

If a detention hearing is held, in order for a person to be detained pre-trial, there must be clear and convincing evidence that no condition or combination of conditions of release will assure the safety of any other person and the community; or a

5

preponderance of the evidence must show that no conditions of release will reasonably assure the defendant's appearance as required. § 3142(f)(2).

Section 3142(g) of the BRA specifies the factors that must be considered in determining whether there are conditions of release that will reasonably assure the appearance of defendant at trial or the safety of the community. 18 U.S.C. § 3142(g). These include "(1) the nature and circumstances of the offense charged, including whether the offense [is a crime of violence, a Federal crime of terrorism, or involves a minor victim or a controlled substance, firearm, explosive, or destructive device]; (2) the weight of the evidence against the person; [and] (3) the history and characteristics of the person, including the person's character, physical and mental condition, family and community ties, employment, financial resources, past criminal conduct, and history relating to drug or alcohol abuse." *United States v. Hir*, 517 F.3d 1081, 1086 (9th Cir. 2008) (citing *Motamedi*, 767 F.2d at 1407).

   1. <u>The Nature and Circumstance of the Alleged Conduct.</u>

The complaint, which is not written by any of the arresting agents and is based solely on hearsay, alleges that "RAMOS-BRITO stepped into the agents' path and used his body to block the agents' pursuit …When the USBP agent tried to physically move RAMOS-BRITO to continue the pursuit, RAMOS-BRITO pushed the USBP agent in the chest." Dkt. 1 at pg. 4, para. 10. While the nature of assault on a federal officer is no doubt serious, the *circumstance* of the alleged conduct as described in the complaint is demonstrably false. Ex. 2.

Exhibit 2, which defense counsel attempted to provide the magistrate court, does not show Mr. Ramos-Brito stepping in the agents' path. It shows Mr. Ramos-Brito outnumbered by agents, in an intersection that the agents could easily navigate. It then shows an agent shoving Mr. Ramos-Brito in the chest. It does not show "a group of USBP agents moved to arrest him," it shows the same agent that shoved Mr. Ramos-Brito throwing him to the ground while other agents pile on. At no point in the video does Mr. Ramos-Brito shove an agent. A subsequent video shows an agent dragging

6

Mr. Ramos-Brito across the pavement by his leg. These are important circumstances because at the very least it shows that Mr. Ramos-Brito has a triable issue of fact that would deter him from non-appearance. At best, it completely exonerates him. By refusing to consider the video, the magistrate court failed to consider the entirety of the circumstances and nature of the alleged offense. This court should consider the circumstances of the allegations, which includes the force used by the agents, and grant Mr. Ramos-Brito pre-trial release.

    2.    <u>18 U.S.C. § 111(a) is not a "crime of violence."</u>

In determining whether conditions can reasonable assure appearance and safety, § 3142(g)(4) requires a judicial officer to consider whether the alleged offense is a "crime of violence." 18 U.S.C. § 111(a) is not a "crime of violence." In *United States v. Dominguez-Maroyoqui*, 748 F.3d 918 (9th Cir. 2014) the Circuit Court used the categorical approach to hold that 18 U.S.C. § 111(a) did not qualify as a "crime of violence" under U.S.S.G. § 2L1.2(b)(1)(A)(ii). "Section 2L1.2 of the Guidelines defines the term "crime of violence" as any of a dozen specified offenses or, alternatively, "*any other offense under federal, state, or local law that has as an element the use, attempted use, or threatened use of physical force against the person of another*." *Id.* (emphasis added). Under the BRA a "crime of violence" means "an offense that has as an element of the offense the use, attempted use, or threatened use of physical force against the person or property of another." 18 USC § 3156(a)(4). A "crime of violence" under Section 2L1.2 of the Guidelines, minus the word "property," is the same as the definition of "crime of violence" under the BRA. If 18 U.S.C. § 111(a) is not a crime of violence under the Guidelines, it is also not a crime of violence under the BRA. Contrary to the findings of the magistrate court, the nature of the crime Mr. Ramos is accused of is not a "crime of violence" and does not weigh in favor of pretrial detention.

    3.    <u>The Weight of the Evidence Favors Pretrial Release</u>

While of the § 3142(g) factors, "the weight of the evidence is the least important" it is still a valid consideration. *United States v. Gebro*, 948 F.2d 1118, 1121 (9th Cir. 1991)). When the magistrate court stubbornly refused to consider the video offered by defense, it chose not to consider the weight of the evidence. In fact it chose to consider only the evidence offered by the government, relying solely on a complaint composed entirely of hearsay. That is not to say that the court is permitted to make a factual determination as to guilt or innocence. *See id.* What the video shows is that the evidence against Mr. Ramos-Brito is extremely low, which weighs in favor of release. This court should not shield its eyes from the true weight of the evidence as the magistrate court chose to do.

    4.    <u>Under § 3142(g)(3), the History and Characteristics of Mr. Ramos-Brito weigh in favor of pre-trial release.</u>

Mr. Ramos-Brito's physical and mental condition following the assault by federal agents favors pre-trial release. *See* § 3142(g)(3)(a). After the agents threw Mr. Ramos-Brito to the ground he felt as though he was being hit or kicked, then felt as though he was placed in a choke hold, which caused him trouble breathing. He sustained multiple contusions on his face, neck, and back. Ex. 3. When an officer dragged him across the pavement it caused Mr. Ramos-Brito cuts and scrapes on both elbows, his left hand and wrist, and his right leg. See Ex. 2, 3. At some point his shirt and pants were ripped. *See* Ex. 3. This motivates Mr. Ramos-Brito to appear at trial to reveal the truth of who assault who. Furthermore, he has no criminal history, he has bond resources, lifelong residency in this district, no history of substance abuse, no concerning mental health conditions, and no history of nonappearance at court proceedings.

     5.     <u>Mr. Ramos-Brito does not pose a danger to any person or the community under § 3142(g)(4).</u>

Any concern that Mr. Ramos-Brito is a danger to any person or the community is unserious and purely speculative. There is no evidence of violence in his past. He does not own firearms. Ex. 4. Mr. Ramos-Brito did not threaten to kill or shoot federal agents. Ex. 5. The only evidence of danger is the claim that Mr. Ramos-Brito told the agents "I'll fuck you up I don't care who you are." Dkt. 9 at 5, para. 10. That is not a serious danger for several reasons. First, the opposite occurred. *See* Ex. 2, 3. Second, the same agent who wrote the complaint mistakenly attributed a different threat to Mr. Ramos-Brito. Ex. 5. And finally, Defense exhibit 2 directly contradicts multiple claims in the complaint, calling into question the voracity of every other claim in the complaint. The risk of danger here falls far short of the clear and convincing evidence required to detain Mr. Ramos-Brito pretrial. *See* § 3142(f)(2).

## IV. <u>CLOSING</u>

Mr. Ramos-Brito should not have spent the last week in pre-trial detention. He should be released from immediately. There is insufficient evidence to hold a detention hearing because Mr. Ramos-Brito is not a "serious risk" of flight, nor "a serious risk [to] obstruct or attempt to obstruct justice, or threaten, injure, or intimidate, or attempt to threaten, injure, or intimidate, a prospective witness or juror." § 3142(f)(2)(A),(B). But even if the court were to hold a detention hearing, the § 3142(g)(1)-(4) factors fall far short of showing by clear and convincing evidence that no condition or combination of conditions of release will assure the safety of any other person and the community, and likewise fall short of establishing by the preponderance of the evidence that no conditions of release will reasonably assure Mr. Ramos-Brito's appearance. Mr. Ramos-Brito respectfully request that he be released from pre-trial detention on his personal recognizance, or on whatever conditions this court deems appropriate.

|   |   |
|---|---|
|   | Respectfully submitted, |
|   | CUAUHTEMOC ORTEGA<br>Federal Public Defender |
| DATED: June 13, 2025 | By  */s/ m. Bo Griffith*<br>M. BO GRIFFITH<br>Deputy Federal Public Defender<br>Attorney for BRAYAN RAMOS-BRITO |

10

# PROOF OF SERVICE

I, **Erica Valencia**, declare that I am a resident or employed in Orange County, California; that my business address is the Office of the Federal Public Defender, 411 West Fourth Street, Suite 7110, Santa Ana, California 92701-4598, Telephone No. (714) 338-4500; that I am over the age of eighteen years; that I am not a party to the action entitled above; that I am employed by the Federal Public Defender for the Central District of California, who is a member of the Bar of the State of California, and at whose direction I served a copy of the attached **MEMORANDUM IN SUPPORT OF PRETRIAL RELEASE; EXHIBITS 1-5** on the following individual(s) by:

[ ] Placing same in a sealed envelope for collection and interoffice delivery addressed as follows:

[x] Placing same in an envelope for hand delivery addressed as follows:

[ ] Placing same in a sealed envelope for collection and mailing via the United States Post Office addressed as follows:

[x] Via email as follows:

**VIA EMAIL:**

Joshua J. Lee
Assistant United States Attorney

Joshua_Lee2@usdoj.gov

This proof of service is executed at Santa Ana, California, on **June 13, 2025.**

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge.

                                                                                     */s/ Erica Valencia*
                                                                                     **Erica Valencia**